The Fourth District's Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good afternoon. This case is case number 4-23-0632, People v. Emmons. Counsel for the appellant, could you identify yourself for the record, please? Matthew Kralovec. All right, thank you. And for the appellee? Justin Nicolosi. Thank you. Mr. Kralovec, you may proceed when you're ready. Thank you. May it please the court. Counsel, my name is Matthew Kralovec. I'm from the Office of the State Appellate Defender, and I represent Cheyenne Emmons, the appellant. We ask this court to reverse her conviction for domestic battery and remand for a new trial. On December 4, 2022, Cheyenne and her boyfriend, Dalton Hiley, got into a dispute that turned physical. Both claimed self-defense. Nobody else saw this struggle. Now, what the jury didn't know was that Dalton Hiley was a repeat offender. Over just an 18-month span, Dalton Hiley pled guilty to two batteries and unlawful restraint. He also had an order of protection entered against him. And just two days after testifying against Cheyenne, he began serving a jail sentence for offenses committed against Cheyenne. In this case, the state conceded that many errors occurred. Among them, it concedes that Hiley's two battery convictions show a propensity for violence and aggression. It concedes that these two convictions should have been admitted under Lynch and Rule 405b2 to support her self-defense claim. It concedes that the jury instructions obviously erred by omitting the state's burden to disprove self-defense. It also concedes that police officers offered hearsay when they testified about Hiley's statements from his police interview. And it concedes that the prosecutor erred by asking Hiley his opinion on Cheyenne's credibility and veracity to tell the truth. For any of these errors, this court can reverse and remand for a new trial. Now, since there are a lot of errors in this case, I'll be focusing this argument on issue one about the convictions and the Lynch evidence and issue two about the self-defense jury instructions. I welcome questions on all the issues. So first, I'd like to focus on the prior convictions and the Lynch evidence issue. The state concedes that Hiley's two battery convictions should have been admitted under Lynch. So it's the state's burden now to prove that excluding these convictions was harmless beyond a reasonable doubt. And the state can't meet that burden here. This case was a credibility contest. It was Hiley's word versus Cheyenne's word. Nobody else witnessed the fight. Even the prosecutor pitched the case to the jury as a he said, she said. These battery convictions changed the case completely. Without it, the jury was looking at the evidence in a vacuum, without knowing who Dalton Hiley really was. It also allowed Hiley to present himself in a false light to the jury. For example, Cheyenne offered a few text messages that happened about a month before this offense. Hiley admitted to sending these text messages. And these text messages show violence and aggression. For example, he admitted to putting his hands on Cheyenne. He promised on his grandma's grave that he never put his hands on Cheyenne again. And in particular, he apologized and admitted to grabbing her by the neck. Now here, Cheyenne claimed that the violence really started to escalate after Hiley grabbed her by the neck. But when asked about this text message, Hiley flatly denied it. He said, no, I have never put my hands on her neck. But that was false. In the probable cause affidavit that I've attached to her opening brief, A1 in the appendix, an officer who responded to the dispute observed Cheyenne and he saw redness on her neck and bruising on his arms and legs. It highly presented himself to the jury as if he'd never grabbed her by the neck. Repeatedly over and over again, he told the jury, I didn't put my hands on her. I've never thrown her down. I've never been aggressive with her. He's only acted in self-defense. But if the jury knew about these violent convictions and Hiley's past as a violent person, it would change his story completely. Not only would it show that he was a violent person and therefore more likely to be violent in this offense and be the aggressor, but it also exposed him as a liar. Now, the state claims that this was essentially overwhelming evidence because Hiley was more credible. But again, that ignores what these convictions would have done to his credibility. And Hiley's story was also not consistent or credible, even for what happened that night. For example, he claimed that Cheyenne was wailing on him. He said it was about 20 to 30 hits to the face that he was flying around room to room and just continuously slapping him. But the photos don't line up with that. At most, there's slight red marks to his face. It does not look like he was just being wailed on. But moreover, that's not inconsistent with Hiley's claims for that or Cheyenne's claims for that night. Cheyenne testified that Hiley at one point started to hit himself in the face saying that I deserve it. And that is credible testimony in light of who we know Dalton Hiley to be. Again, he sent text messages threatening to commit suicide. And counselor, is it shy or Miss Siemens testimony inconsistent with what she told officers at the initial reporting of this incident? Yes, it was inconsistent with what she originally told officers. For example, Hiley had just chased her and blocked in her car down a cul-de-sac. And she just told the verbal dispute and she wanted to leave to clear her head and get some space. She did not initially tell the officers that they had just gotten into a physical dispute. But she told the officers later after that after she was arrested, what happened and that's consistent with what her testimony was at trial. It's not unheard of for domestic violence victims to initially deny being abused by police officers. Plenty of cases have found that to be true. But here, again, Hiley's story is inconsistent. So not only was Cheyenne inconsistent with her prior statements, so was Hiley. For example, Hiley testified at trial about a 911 call that happened earlier that night. Apparently, there was a 911 call about a male holding a knife to throat. At trial, Hiley denied that ever happened. He said that it was somebody on Xbox heard something and it wasn't Cheyenne and it wasn't him calling the police. But in the body cam video, what he first told police was, yeah, he had suicidal thoughts. He admitted to being suicidal before. He doesn't deny that he threatened to kill himself that day. All he said was that no knife was involved. He didn't tell them the story about how, oh, somebody on Xbox overheard what we were talking about. And even Officer Eaton, who responded to the earlier call and this call, in his police report, he identified Cheyenne as a caller. So again, without these convictions, it casts Hiley in a different light. He's threatened to commit suicide before and manipulate Cheyenne through pressuring her, just like Cheyenne testified at trial, both emotionally and physically. Which is, again, shown in the text messages as well. He said, if they find me dead, everybody will know why. He texted that over to Cheyenne, which is another example for how he was a manipulative person, both physically and emotionally. So looking at this case, these convictions would have changed the jury's opinion about who was the aggressor. There's no other physical evidence to corroborate it. The police officers really add nothing. They did testify that the marks on his face look like they were consistent with slaps. But again, these are very faint marks on Hiley's face. And the officers only said they were consistent with slaps because that's what Hiley told them. Time and time again in their testimony, they said he said these were the marks. He said she caused these marks to his face. Looking at the photos, the marks on his face, you can't tell one way or another what the actual cause was. And the police officers weren't there. They don't have any personal knowledge about how this dispute started and they provided no insight. So again, this case comes down to who was the aggressor, whose story was more believable between Cheyenne and Hiley. And there's no other evidence to support them. These convictions would have changed the picture for the jury. They would have saw that he was a violent person and that he was beyond a reasonable doubt that these two convictions would not have impacted their decision. They can't meet the standard. This would even meet the standard of first-pronged plain error. It's a credibility contest. So they can't meet the standard here. Counsel, excuse me, if I may. Yes. Guessing the convictions, you noted the People v. Evans case from the fourth district as well as the DeGrave case. I guess one question I have for you, while I appreciate your argument, is that you prefer that we would follow the DeGrave case. Is there a way to distinguish the Evans case from the case that is before us today? Or does it require us in considering Evans that we would have to, if you will, disagree with another panel? Or is there a way to distinguish this case? So the Evans case, the issue about the post-offense, whether post-offense acts are admissible under Lynch, that was not briefed for the Evans court. So there is no way to distinguish it without disagreeing with Evans. But the DeGrave's perspective for how post-offense acts are admissible under Lynch is more consistent with the Lynch decision and also the rules of evidence and statutes that would allow the state to offer propensity evidence, even though it happened after the charged incident. So Lynch is premised on character evidence being relevant, highly relevant, it said, to whether someone was the aggressor. That was the second purpose of the Lynch evidence. And when Lynch was decided, the state couldn't offer propensity evidence of the defendant. But now the state can. Rule 404B and the other statutory exceptions allow both evidence of offenses and convictions to be entered by the state to prove propensity. But propensity. So the Lynch court, if they were assigned a case today, would not have granted the state more rights to present their case than the defendant would to defend theirs. And that was actually one of the driving forces that the Lynch court had in saying that this propensity evidence of the victim is relevant and admissible, even though it created unfair advantage for the state at the time, it was still relevant because these cases are often incomplete and very conflicting record as well. And propensity evidence helps the jury decide. So to sum up the first issue. This evidence was relevant to who was the aggressor. It was just one person's word versus the other. These two convictions would have shown that Hiley was a violent and aggressive person. It would have shown the jury that he was a liar and he couldn't spin himself out of presenting himself as a nonviolent person who's never hurt Cheyenne, who's never, who's always looking for her best interest, who's never put his hands on her except to restrain her. In fact, in this case, Hiley even testified that there were prior instances where Cheyenne attacked him and abused him. Yet the jury was shielded from knowing who Hiley really was. And that was a violent and aggressive person and a repeat offender. So we ask that this court reverse on the lynch evidence issue and demand for a new trial. As for the second issue about the jury insurrections, the state concedes that the jury insurrections obviously erred by omitting the state's burden to disprove self-defense. And this same error has been found time and time again to be second prong plain error. Cheyenne found that this court in Swarovski found that, and also Moran found that. Now, there were a few mentions about the state's burden during closing arguments, but that did not cure these omitted instructions here. First of all, the jury was instructed not to follow or listen any arguments by counsel that conflicted with the written instructions. And the comments by counsel also did not fully emphasize or explain what the state burden was. For example, in the opening statements, the prosecutor mentions what the state had to prove. He only mentions bodily harm. And then later in closing arguments, when the prosecutor first mentions what the state has to prove, he mentions bodily harm and household member. And then he says, we also have to disprove self-defense. Although he doesn't say that time, they had to prove it beyond a reasonable doubt. So these sporadic mentions of the state having to disprove beyond a reasonable doubt that she was acting in self-defense, not fully explain how self-defense applied to these facts in a way for the jury to follow it and apply it to what they heard. And these incomplete statements and general references didn't fully explain this to the jury, and particularly in light of the admonishments by the court not to follow anything that conflicted with these written instructions. At another point, prosecutor also told the jury that we'll be getting instructions on the law of domestic battery and self-defense in the written instructions. So at that point, it would signal to the jury, they could rely on the written instructions, which don't mention the state's burden at all. So these general references don't explain to them what the state had to prove or disprove beyond a reasonable doubt. For that reason, even though it was mentioned a few times in closing arguments, it was still a second-pronged plain error, as have been repeatedly found. If there are no more questions about any of the issues, I'll reserve, I'll rest now on the arguments and reserve time for rebuttal. Okay. Thank you, Mr. Kralovec. You'll have time in rebuttal. Mr. Nicolosi, you may proceed. Good afternoon, your honors. May it please the court, counsel. My name is Justin Nicolosi. I represent the state of Illinois in this matter. The state submits its court to affirm the defendant's conviction in this case regarding issue one, as Mr. Kralovec alluded to. The state, we do concede several errors that occurred in this case. The state believes that one of those issues occurred in issue one regarding Alton Hiley's prior conviction or its convictions for battery, domestic battery. Specifically as to the 2023 domestic battery conviction, what is the state's position on that? As far as whether or not it's an error that that was not considered. Defendant has stated an argument in her brief that the state has conceded that the 2023 domestic battery conviction should have been admitted. Is that the state's concession? Laura, it's a tough argument, your honor. As I argued in my brief, we did point out the Evans case and how it pointed at the language in the statute and the language in Lynch regarding the work prior as far as acts of aggressive or aggression. And I don't know how tough an argument it is. You have precedent from the fourth district that directly addresses the issue in your favor. I'm very curious about your position that it's a disclosure. As I argued in my brief, I think there's a lot of, as Mr. Kolevich mentioned, there's items that were not discussed in Evans that the state would feel improper if it didn't bring up the fact that that issue, it was not really briefed in Evans. The state even conceded the issue in Evans. This court did not accept state's concession in that case on that particular issue. The state just did not feel comfortable brushing those concerns under the rug and felt that it needed to acknowledge those in the brief and hear an argument. I'm going to leave it up to this court to obviously to revisit Evans and decide whether it believes reconsideration is needed. I'm sorry, your honor, that's about all I can say on Evans as far as the state's position. Okay, thank you. Sure, but moving on, assuming arguendo, this court does reconsider Evans and does accept Mr. Kolevich's argument that at least two convictions for battery, domestic battery, should have been presented pursuant to Lynch in this case. The state still believes that reversible error was not committed. As I argued in my brief, this error was harmless beyond a reasonable doubt. While Mr. Kolevich discussed things regarding Mr. Hiley's credibility regarding text messages and other things, the state wants to focus this court on the actual evidence presented in this case and the incident that occurred on December 4th. That's the most important thing to consider when talking about whether or not this was harmless. While there were two versions of events, while it's largely a contest of credibility, that does not mean that this error was not harmless because as the state argued, one of these versions of events is credible and comports with the other evidence in the case. That's Hiley and the other version of events, which is the defendant doesn't really comport with the evidence that was presented. Photos in this case that were omitted show significant red marks to Dalton Hiley's face. The state's going to disagree with defense counsel's opinion on those pictures. Dalton Hiley's face is almost entirely red. It was consistent with being as he was quite open, open slap punched in the face heatedly by the defendant. There are also on other parts of the body in those photographs that were consistent with, for example, having a crossbow thrown at him and hitting him in the eye. Those pictures line up with Hiley's testimony that he was, as Mr. Kralovic said, wailed on by the defendant. I think the pictures work with Hiley's testimony more than they do the defendants. The defendants, number one, you have to have significant credibility concerns with the defendant. When she was on video with the officer the first time, she did not say anything about Hiley having struck her in physical with her in any way, shape or form. Then she only changed her tune when she realized she was going to be arrested. Further, her testimony. Counsel, excuse me. How do you that that is something that is somewhat common practice when we're addressing domestic violence issues that initially matters are not reported? How do you address that comment? I understand that comment, but the state would submit that each case needs to be considered on its own facts and its own underlying evidence. In this case, it seemed like she was, you know, again, as I pointed to regarding Hiley's testimony, the evidence kind of physical evidence with regard to pictures and the video that we have, that it's just more support Hiley's version of events than the defendant's. The defendant basically said that he like basically pushed Hiley one time. It was, I believe it was defense counsel who suggested you kind of put the words in the defendant's mouth regarding whether she struck or hit Hiley. She described it as a push. And basically her testimony, you know, summarizes that only happened one time. Well, the pictures don't really bear that out that her version of events doesn't really support. And the thing we actually saw that happened of the victim in this case that I think coupled with the fact that she clearly changed her version of events when she realized she arrested, regardless of whether or not that common practice, we don't have to just rely on common practice and things like that in this case, because we actually have pictures. We'd see that this person was many times and including with an object on his side. We don't, we have more than just the piece that she, that defense counsel alluded to. We have a little bit more and we can point to whether or not they one version of event over the other. And the state submits that, you know, those, the testimonies and the favorably towards Hiley's version of events having been as a result of that state submits that any error in not admitting Hiley's convictions is harmless based on the evidence. Moving on to issue two, the instructional issue. Again, the state has to concede that an error was added on to the instructions as was required by law. But once again, the state submits that that error was, is not reversible error. The state submits that the plain error did not occur under the second prong for that particular error. As, as my brief discusses the Cassini case and the Huckstead case, I think are important with regard to what happened in here. And it kind of frames the end script, what happened here in a better light. The Cassini court, while that found a second prong plain error based on this same issue, the facts are different. We have to consider the facts. Cassini talked about how important it was that in closing arguments, nobody in that case mentioned that it was, that the state had the burden of being, of disapproving self-defense. And in Huckstead, which, which came before that, that actually happened. The parties, I think the prosecutor in that case, the court in Huckstead said repeatedly informed the jury that it had the burden of disproving self-defense in that case. Well, your honors, that's what we have here. I know defense counsel said it was sporadic mention of the state's burden to disprove. The are you arguing that closing arguments are a good substitute for the judge's jury instructions? And how do you, how do you reconcile that with the statement the court would have given to not consider argument as evidence or not consider them if they conflict somehow with the instructions of the court? Your honor, I'm not, I'm certainly not going to argue that it's a perfect substitute, but I think we can point to case law, including case law from the Supreme court that says it does suffice in the absence of a proper instruction like in Huckstead to, it does suffice that the jury was informed many times about what the burden of the state actually held. You know, even though the jury wasn't properly instructed in that case, court still found that was not reversible error based on the fact that based on comments made it closing arguments and rebuttal that the jury actually knew without question what the burden of proof regarding self-defense was. Case admits that's what we have in this case. The prosecutor at the beginning said we have in no uncertain terms said we have the burden of disproving self-defense. Defense counsel even referred to the fact that the state had the burden to disprove self-defense. And then in rebuttal, the prosecutor once again said we have proof that defendant's self-defense case is out the window and again said that the state had the burden of proving beyond a reasonable doubt a defendant's guilt. So the state's pointing to prior case law, you know, and Cassini, even though that holding wasn't in the state's favor it talked about how important it was that there were no comments regarding the burden of disproving self-defense and that that was on the state. That was important consideration there and in Huckstead and the state submits the facts in this case with Huckstead and there's just no question in this case that the jury knew that it was the state and the state alone that had the burden of disproving self-defense. Mr. Nicolosi, I just want to ask a question relating to the analysis of this issue. You've indicated that the state is conceding that it was error for the trial court not to instruct on this point. And in terms of the analysis, if we're going the route of a plain error analysis, defendant is, well, we've got the two different prongs of plain error and we're talking about the closeness of the evidence at this point. But in terms of your concession and your suggestion that the state's closing arguments could have reasonably informed the jury as to the state's is that relevant towards whether or not there was clear error or is that then relevant to whether or not the evidence was closely balanced? Your Honor, with all due respect, I haven't really talked about closely balanced with regard to the second issue here. I was talking about the second prong talking about whether it's a structural error. Regarding the first step of a plain error analysis is, of course, determining whether a clear or obvious error occurred. The state is conceding that there was a clear or obvious lack of instruction. I don't believe if we are moving on to the closely balanced argument, which the defendant does raise in her brief, the state submits that it doesn't, the actual error that committed doesn't really play into a closely balanced analysis that's dealing mainly with the facts. And as I argued kind of in issue one, I would kind of make the argument I made there that the case was not closely balanced based on Kylie's events versus other defendants. But you're saying, excuse me, you're saying that this issue can't be examined under a first prong plain error. No, it can be. Being the closely balanced prong, I don't believe so. That's not anything I considered in my argument. I didn't kind of, when it comes to closely balanced, I kind of just focus on the evidence that was presented in this case, not necessarily these. Okay, go ahead, please. I believe that's about all I have on this issue. Again, if there are any other questions regarding issues three and four, I'd be happy to answer them. But regarding issues one and two, the state would submit that while errors did occur in this case, either one rises to the level of a reversible error and that the state argues that this should harm the defendants. Okay, are there any other questions? I'd be happy to. Oh, sorry. Yeah, I do have a question on the issue of Mr. Hiley speaking with jurors. I want to make sure I understood. The state at a minimum concedes that it should be remanded for a REMER hearing. Is that correct? No, your honor. I did not concede that it should be remanded. I argued at the end of my issue three that if this court does find that prejudice attached to the fact that Dalton Hiley had that conversation, if this court finds that, then it should remand as opposed to vacating the conviction. But I do argue in my brief that I'm citing Williams and some other cases that it's not a confession or a concession of error of the state. Counsel, along those lines on that same issue, and I note that you note the case and conclude in your analysis that it's similar to Williams, but as far as a distinguishing factor between the case here and those two cases, here the judge did not even make inquiry of the actual jurors. In the other two cases, I believe there were affidavits or an inquiry that was made. I think that's a big distinction. Wouldn't you agree? I understand, your honor. I can't deny that. Certainly, this case is not doesn't fit nicely with any of those, but the state would still submit based on the fact that we still, at this point in time, we don't know exactly what Dalton Hiley talked about with those two jurors. The fact is that there was no, we can't, we can't even conclude that there was any discussion of this case whatsoever. And based on that, the state said that we can't presume we don't know that they were talking about that. Actually, that's, that's where my argument kind of rests on that point. I do want to understand your, um, that's all I have. Are there any other questions? I'd be happy to. I don't see any other questions. Thank you. Thank you. Rebuttal argument. Thank you, your honor. Uh, so just a few quick points on the first issue about the, the marks again, um, the state's argument that these convictions barring these convictions was not, was harmless. It comes down to credibility determination. Uh, the marks on Hiley's face, aren't consistent with someone who just got whaled on. It was a cold December night. Uh, and the photos show that Hiley's whole body is red. Um, he's outside exposed to the cold weather. Uh, and he's a light, he has a fair skin tone. His whole body looks red. Even the body camera video, uh, when the officer is looking at Hiley, you don't see the marks on his face. It's only until they have a photo where you could see something. And he had to point out to the jury, these marks weren't from acne breakouts or anything like that. Um, these ones were from slaps and other types of hits. Counsel also mentioned how some of the marks were consistent with a crossbow. This, the crossbow testimony actually shows how these marks are inconsistent with what Hiley claimed. Both officer Eaton and Vicari testified that the marks on Hiley's arm, uh, were consistent with the crossbow being thrown at it. But Hiley didn't even testify to that. Hiley claimed that the marks on his stomach is what was from the crossbow. He said what was on his arm was a mark from being grabbed. So these officers can't tell what these marks are from just from looking at it. Again, it's relying all on what Hiley told them that night. Um, so the marks on his body do not show that if the jury knew he was a violent person and had a propensity for violence, that they would have believed Hiley over Cheyenne. And again, Cheyenne's testimony about Hiley slapping himself in the face and saying, I deserve this. It's consistent with Hiley, what we know to be Dalton Hiley. He's sent threatening text messages, text messages, threatening to commit suicide that day. He held a knife to his throat and threatened to commit suicide. He did not deny to police that he threatened to kill himself that night. All he said was that a knife was not involved. And actually the photos of his face on his show, his left side, there is a mark on his neck, which is long and thin about like an inch or two long. That does not look like any marks on his face. If anything that is more consistent with a pointed object like the knife, just like Cheyenne told them. So the marks do not show definitively that Cheyenne's story was not credible or cannot be believed. Certainly not to the point where excluding these two convictions or even the would have affect their determination in this case. I noticed my time is running low. So another point about the talk with the jurors, issue number three. So we don't need to know what Hiley told the jurors before the presumption of prejudice applies. This case, Hiley was the accuser, right? He wanted the jury to believe that he was the one who was acting in self-defense. He was two days away from serving a jail sentence for being convicted for pleading guilty to offense against Cheyenne. And then he approached two jurors knowing that they were jurors and began a conversation with them. The whole question that the jury was asked was who's more believable? Do we believe that Dalton Hiley really had an anger control problem when we just had a conversation with them outside the courthouse and he seemed fine to us? Cheyenne was not present for this conversation. She did not get to hear what Dalton told those two jurors. She did not get to confront him and she did not get to expose him for who he is. He presented all himself to the jury testifying that he's only caring about her best interest, that he would never harm her, that everything he's doing is because he's worried for Cheyenne. And then he got the jurors to like him. And the first thing that the prosecutor asked him when he was recalled to testify after this conversation was, was she telling the truth? Do you think she's a liar? This conversation alone triggers the presumption of prejudice. Witnesses- Just because we're, I may interrupt you if I may, just because we're short on time and I want to jump back to the question that I believe Justice Harris was inquiring about earlier. With regards to the issue and the state's concession that the jury instructions were incorrect, are you arguing that that is second-pronged error only or can this court also review that under first-pronged error? I can review it under first-pronged. We argued in our opening brief that it was first-pronged plain error, second-pronging plain error, and that her counsel was ineffective for not bringing them. And I think the case that we cited in our brief, People v. Berry, it's a Supreme Court case, found that the failure to include instructions about self-defense, I'm not quite positive it was the burden of disproof, but I believe it had to do with self-defense, was first-pronged plain error because the evidence was closely balanced, which again is essentially what this case is. It falls right in line with People v. Naylor. It was a credibility contest and there was no physical evidence that rejected either's claim. Thank you. Yeah, first-pronged, this court can still reverse. So just to sum up briefly, very quickly, we asked this court to reverse Cheyenne's conviction and remand for a new trial for the reasons that we say in the brief and the reasons we stated here. Dalton Hiley was a violent and aggressive person, excluding his convictions, allowed him to present himself in a false light and lied to the jury, and this court reversed. Okay, thank you, Mr. Kralovec. Thank you both. The case will be taken under advisement and a written decision will be issued. The court stands in recess.